[Cite as *In re R.D.*, 2026-Ohio-2839.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re R.D., A.P.

Court of Appeals No.  {48}L-26-00073
{48}L-26-00074

Trial Court No.  24299664
25304816

**DECISION AND JUDGMENT**

Decided:  July 22, 2026

* * * * *

Emily McGill, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**OSOWIK, P.J.**

{¶ 1} This is an expedited, consolidated appeal from the judgment by the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant-Mother, R.P., to two of her five children, 4-year old R.D. and 1-year old A.P., and granted appellee Lucas County Children Services permanent custody of them. The fathers of R.D. and A.P., whose parental rights were also terminated, did not appeal the judgment. We will limit our discussion below to Mother and the subject children. For the reasons set forth below, this court affirms the juvenile court's judgment.

**I. Background**

{¶ 2} The following facts are relevant to this appeal. On April 29, 2024, appellee filed a complaint against Mother alleging, under R.C. 2151.04 and 2151.03, dependency

and neglect of R.D.,[1] and then on April 22, 2025, appellee filed a complaint against Mother alleging, under R.C. 2151.04, dependency of A.P.[2]

{¶ 3} In July 2023, appellee learned that in 2022, R.D.'s biological father, confirmed through DNA testing, impregnated R.D.'s then 13-year old half-sibling, B.P.,[3] while Mother maintained a relationship with him, even after his incarceration for unlawful sexual contact with a minor. Appellee had concerns about stable and safe housing for one-year-old R.D. Mother was involved with appellee for case plan services that included completing multiple dual diagnostic assessments and following all recommendations for her three diagnoses: depressive disorder-moderate, cannabis use disorder-mild, and major depressive disorder-mild. Her case plan services included psychiatric treatment, individual therapy, substance abuse disorder counseling for marijuana, a non-offending parenting/caregiving class, a nurturing parenting class, and case management. Mother failed to complete her case plan services.

{¶ 4} On July 10, 2024, the juvenile court adjudicated two-year-old R.D. a dependent and neglected child. Thereafter, appellee was awarded temporary custody of R.D. starting on August 22, 2024, and extended the temporary custody until the juvenile court held a hearing, received testimony from three witnesses, admitted 18 exhibits into

---

[1] Assigned case No. 24299664, which involved three of R.D.'s half-siblings, including B.P.

[2] Assigned case No. 25304816.

[3] Mother's five children were fathered by four different boyfriends: H.S., J.H., A.D., and an unknown man. B.P. testified that she initially believed J.H. had impregnated her. B.P. also testified that her own father, H.S., "came doing the stuff to me" starting at eight-years-old before J.H. and A.D. had sexual contact with her.

2.

evidence, and granted appellee's October 14, 2025 motion for permanent custody of R.D. on February 20, 2026. R.D. was four-years old.

{¶ 5} While the foregoing was pending with appellee, Mother gave birth to A.P. in 2025, which she tried to conceal from appellee. Mother could not confirm the identity of A.P.'s biological father. Upon giving birth to A.P., Mother sought to escape to Indiana and beyond appellee's reach, which appellee argued showed that Mother had not taken accountability for the trauma of abuse and had not learned from her case plan services to protect her children from abuse. Mother had previously escaped to Indiana upon learning of B.P.'s pregnancy, where B.P. gave birth, but eventually returned to Ohio. Then on July 21, 2025, the juvenile court adjudicated A.P. a dependent child. Thereafter, appellee was awarded temporary custody of A.P. starting on September 2, 2025, and extended until the juvenile court granted appellee's motion for permanent custody of one-year-old A.P. on February 20, 2026.

{¶ 6} The juvenile court described the significance of Mother's inability to identify A.P's biological father: "LCCS and the GAL were concerned about [A.P.'s] father remaining unidentified because the major issue in this case had been Mother's choice in men and her ability to protect her children from those men."

{¶ 7} The juvenile court made the following relevant findings regarding granting appellee's motions for permanent custody of R.D. and A.P.:

{¶ 8} Under R.C. 2151.414(B)(1)(a), the juvenile court found by clear and convincing evidence that R.D. and A.P. "have not been abandoned or orphaned, have not been in the custody of a public children services agency . . . for at least a 12 months out

3.

of a consecutive 22-month period, and cannot be placed with [Mother] within a reasonable time or should not be placed with [Mother]."

{¶ 9} Under R.C. 2151.414(E)(1), the juvenile court found by clear and convincing evidence that following the placement of R.D. and A.P. outside of the home and notwithstanding case planning and diligent efforts by appellee to assist Mother to remedy the problems that initially caused her children to be placed outside the home, "Mother has failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home." The juvenile court explained, citing *In re R.B.*, 2025-Ohio-1579, ¶ 103 (6th Dist.), that Mother's participation in case plan services is not only about getting a "check mark," but about demonstrating behavior change so that children can be safe in Mother's care.

> Mother did comply with and complete several case plan services, although she was unsuccessfully discharged from therapy. However, Mother's ability to protect the children remains a concern, and the Court does not believe Mother's participation in case plan services has led to behavior change sufficient for the children to be safe in her care. After learning [B.P.] was pregnant (by Mother's then boyfriend, [A.D.]), Mother took the children to Indiana. She later returned to Lucas County, and LCCS tried to provide her services in the home. LCCS then sought the removal of the children in April 2024 after learning Mother was still having contact with [A.D.] in prison. A year after the older children's removal and after she had completed a non-offending caregiver program and a parenting class, Mother concealed her pregnancy and then told hospital staff at [A.P.'s] birth that she wanted to go to Indiana. This raises significant concern that she had no learned from her non-offending caregiver program and parenting class, if her plan was to leave the state just as she had done after learning [B.P.] was pregnant. Mother continued in individual therapy after [A.P.'s] birth, but she was unsuccessfully discharged.

{¶ 10} Under R.C. 2151.414(B)(1)(d), the juvenile court found by clear and convincing evidence that R.D. has been in the temporary custody of LCCS for 12 or more

4.

months of a consecutive 22-month period. Citing R.C. 2151.413(D)(1) and *In re N.M.P.*, 2020-Ohio-1458, ¶ 22, the juvenile court calculated R.D.'s period of temporary custody with appellee as over 15 months, which was from June 28, 2024 (60 days after removal) to October 14, 2025 (motion for permanent custody).

{¶ 11} Under R.C. 2151.414(D), the juvenile court found by clear and convincing evidence that a grant of permanent custody is in the best interests of R.D. and A.P.

{¶ 12} Under R.C. 2151.414(D)(1)(a), regarding the interaction and interrelationship of the children with their parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the children, the juvenile court determined by clear and convincing evidence that "both children are well-bonded to their foster parents and other children in their foster houses. There are no concerns for [A.P.'s] visitation with Mother. [R.D.] has regressed in her behavior since beginning visits with Mother, but the specific reason is unclear."

{¶ 13} Under R.C. 2151.414(D)(1)(b), regarding the wishes of the children, as expressed through their guardian ad litem with due regard for the maturity of the children, the juvenile court determined that "[A.P.] is less than one year old and cannot express his wishes. [R.D.] is four years old, and her wishes are unclear, particularly because she has regressed in speech. The GAL recommended permanent custody as being in the children's best interest."

{¶ 14} Under R.C. 2151.414(D)(1)(c), regarding the custodial history of the children, the juvenile court determined by clear and convincing evidence that "[R.D.] was in Mother's custody until the emergency shelter care hearing on April 29, 2024, and has

5.

been in LCCS' custody since that date. [A.P.] was born in April 2025 and has been in foster care since his release from the hospital after birth."

{¶ 15} Under R.C. 2151.414(D)(1)(d), regarding the children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, the juvenile court determined by clear and convincing evidence that:

> [R.D.] and [A.P.] deserve permanence in an environment that offers them safety, stability, and consistency. At this time and for the foreseeable future, [R.D.'s] and [A.P.'s] parents will not be able to provide a safe, stable and consistent environment for them. The Court does not believe that Mother has changed her behavior enough that she could protect her young children, and the Court does not believe the children would be safe in her care.

{¶ 16} Under R.C. 2151.414(D)(1)(e), whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child, the juvenile court determined by clear and convincing evidence that no such factors applied to Mother.

{¶ 17} Mother timely appealed the juvenile court's decision with two assignments of error:

> 1. The trial court's finding pursuant to R.C. 2151.414(E)(l) that Mother failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home was not supported by clear and convincing evidence.

> 2. The trial court abused its discretion when it found that Mother had failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child, pursuant to R.C. 2141.414(E)(11).

6.

{¶ 18} On March 23, 2026, this court consolidated case No. L-26-00074[4] into L-26-00073[5] under App.R. 3(B).

## II. Permanent Custody Determination

{¶ 19} We will address Mother's two assignments of error together.

{¶ 20} We review the juvenile court's determination of permanent custody under either a sufficiency-of-the-evidence and/or a manifest-weight-of-the-evidence standard, depending on the nature of the arguments presented by the parties. *In re A.S.*, 2026-Ohio-244, ¶ 98 (6th Dist.), citing *In re Z.C.*, 2023-Ohio-4703, ¶ 11; *In re J.D.*, 2024-Ohio-282, ¶ 43 (6th Dist.). A sufficiency-of-the-evidence standard is distinctly different, both quantitatively and qualitatively, from a manifest-weight-of-the-evidence standard. *In re Z.C.* at ¶ 13. The former is a test of evidence adequacy while the latter is not a question of mathematics but depends on its effect in inducing belief. *Id.* Whether evidence is legally sufficient to sustain a verdict, or in this matter the juvenile court's decision on permanent custody, is a question of law. *Id.* We will affirm the juvenile court's decision when the evidence is legally sufficient to support the decision as a matter of law. *Id.*

{¶ 21} We find the gravamen of Mother's first assignment of error is that the juvenile court erred by reaching its decision to terminate Mother's parental rights to R.D. and A.P. and to grant appellee permanent custody of them without sufficient evidence under R.C. 2151.414(E)(1), Mother, who did not testify at the disposition hearing, argued the lack of clear and convincing evidence for removing R.D. and A.P. "was disputed at

---

[4] The appeal of juvenile court case No. 25304816.
[5] The appeal of juvenile court case No. 24299664.

7.

trial" for the following reasons: first, no phone records were introduced at trial to corroborate Mother's contact with A.D., "let alone after his conviction."[6] Second, no medical records conclusively showed Mother's statements to hospital staff following A.P.'s birth about permanently fleeing to Indiana or misrepresenting the custodial status of her children.[7] Third, there was no evidence that Mother concealed her pregnancy of A.P. such that "she had learned nothing from her case plan services, and that therefore, was incapable of keeping the children safe."[8] Mother concludes, "Without clear testimony as to why the children were removed, this court should find that Mother did not, and arguably could not, fail continuously and repeatedly to remedy the issue which caused the removal[.]"

---

[6] Appellee's ongoing caseworker testified in response to the question of Mother's statements at the family case conference in April 2024 about communicating with A.D. that, "At first she denied it and then when questioned again her statement was that she just wanted to know the truth of what ,happened," despite the DNA test confirming A.D. was the biological father of B.P.'s child.

[7] The juvenile court cited to the transcript of the February 3, 2026 hearing at which it found, "A staffing was held for [A.P.], mainly because LCCS was not aware that mother was pregnant. Mother told LCCS that she was 'fearful' to tell anybody. While at the hospital for the birth of A.P ., it was reported to LCCS that mother was trying to take A.P. to Indiana where her other children were, which was untrue."

[8] The juvenile court found, "In April 2025, Mother gave birth to [A.P.]. LCCS had not known Mother was pregnant, although records from [A.P.'s] birth (State's Exhibit 4) show she received prenatal care. LCCS had held a case review meeting a few weeks before [A.P.'s] birth, but Mother never mentioned her pregnancy and did not visibly appear pregnant. Mother told supervisor Rick Mendieta that she had concealed her pregnancy because she was afraid. LCCS learned that at the hospital, Mother said that she needed to be discharged with [A.P.] so she could go to Indiana. (These comments are also reflected in the hospital records, State's Exhibit 4.) Mother admitted to Mr. Mendieta that she had said this."

8.

**{¶ 22}** Prior to granting appellee's motion for permanent custody of R.D. and A.P., the juvenile court must make specific findings by clear and convincing evidence pursuant to R.C. 2151.414(B)(1). *In re A.M.*, 2020-Ohio-5102, ¶ 18. First, "that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies." *Id.* Second, that the grant of permanent custody to appellee is in the best interest of the children. *Id.*, citing R.C. 2151.414(B)(1).

**{¶ 23}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 471 (1954), paragraph three of the syllabus.

**{¶ 24}** For the first prong regarding permanent custody, the juvenile court determined by clear and convincing evidence that both R.C. 2151.414(B)(1)(a) and (d) applied to Mother, which states:

> [T]he court may grant permanent custody of a child to a movant if the court determines . . . by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> . . .

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state.

{¶ 25} Thus, under R.C. 2151.414(B)(1), any of the factors in subparts (a) through (e) satisfy appellee's burden for filing motions for permanent custody. *In re C.W.*, 2004-Ohio-6411, ¶ 27.

{¶ 26} As an independent basis under R.C. 2151.414(B)(1)(d), Mother does not challenge the juvenile court's calculation of the periods of time during which appellee had temporary custody of R.D. such that she offers a different calculation. *In re B.K.*, 2010-Ohio-3329, ¶ 44 (6th Dist.). Rather, Mother merely argues that at the time of appellee's filing of the motion for permanent custody of R.D., there was no mention of the length of time in the agency's custody. However, appellee's motion specifically referenced R.C. 2151.414(B)(1)(d), stated it obtained interim temporary custody of R.D. on April 29, 2024, and that "the child has been in the temporary custody of LCCS for more than twelve months of a consecutive twenty-two-month period."

The "12 of 22" provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. Through the "12 of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds.

10.

*In re C.W.* at¶ 22. "The clear and unambiguous language of the statute must be applied as written. R.C. 2151.414(B)(1)(d) simply requires 12 or more months of temporary custody within a consecutive 22-month period. Nothing in R.C. 2151.414(B)(1)(d) requires 22 months of agency involvement before the agency seeks permanent custody." *In re N.M.P.*, 2020-Ohio-1458, at ¶ 22.

{¶ 27} Although we find that R.C. 2151.414(B)(1)(d) satisfied appellee's burden, we will also review R.C. 2151.414(B)(1)(a). Where the juvenile court, as it did in this matter, also determined the first prong regarding permanent custody pursuant to R.C. 2151.414(B)(1)(a), the juvenile court must also consider the presence of any R.C. 2151.414(E) factors that would indicate the children cannot be placed with Mother within a reasonable time or should not be placed with her. *In re T.G.*, 2023-Ohio-2576, ¶ 36 (6th Dist.).

{¶ 28} Here, the juvenile determined by clear and convincing evidence that R.C. 2151.414(E)(1), the subject of Mother's first assignment of error, applied to Mother, and the juvenile court needed to only find one. *In re L.C.*, 2024-Ohio-283, ¶ 88 (6th Dist.). We find that the juvenile court's determination under R.C. 2151.414(E)(1).was supported by clear and convincing evidence in the record. Although Mother engaged in case plan services from time to time, she failed to complete all of them. Moreover, Mother failed to internalize the lessons from her services about her responsibility to protect the children from her poor choice in men.

{¶ 29} In order to satisfy the second prong regarding permanent custody, the juvenile court must consider "all relevant factors," including the nonexhaustive list under

11.

R.C. 2151.414(D)(1)(a) through (e). *In re A.M.*, 2020-Ohio-5102, at ¶ 19. "Consideration is all the statute requires." *Id.* at ¶ 31. We find the juvenile court satisfied the second prong by considering each of the R.C. 2151.414(D)(1)(a) through (e) factors.

{¶ 30} Notably, we find that Mother's second assignment of error questions the sufficiency of the evidence under R.C. 2151.414(E)(11) to support the juvenile court's decision because the "trial court found that this factor applied to terminate Mother's custody of A.P., because [B.P.] was placed in a permanent planned living arrangement (PPLA) in conjunction with long-term agency custody, and as an alternative to reunification with mother." However, the juvenile court did not make any findings under R.C. 2151.414(E)(11) for Mother. In fact, Mother's argument that her parental rights were terminated with respect to B.P.'s PPLA is contrary to its definition.[9]

{¶ 31} Upon review we find that as a matter of law the evidence is legally sufficient to support the juvenile court's grant of appellee's motion for permanent custody of R.D. and A.P. The juvenile court's determination was sufficiently supported by clear and convincing evidence in the record to produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

{¶ 32} Mother's first and second assignments of error are not well-taken.

---

[9] Pursuant to Juv.R. 2(HH), a "planned permanent living arrangement" is where the juvenile court "gives legal custody of a child to [appellee] without the termination of parental rights" and "the order permits [appellee] to make an appropriate placement of the child and to enter into a written planned permanent living arrangement agreement with a foster care provider or with another person or agency with whom the child is placed."

12.

## III. Conclusion

{¶ 33} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating Mother's parental rights to R.D. and A.P. and granting permanent custody of them to appellee is affirmed. Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Thomas J. Osowik, P.J. _____
JUDGE

Christine E. Mayle, J.

_____
Myron C. Duhart, J. JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.